UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>*Plaintiff*,<br><br>v.<br><br>KEITH HAESSLY,<br>*Defendant.* | No. 3:16-cr-32 (VAB) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

Keith Haessly[1] ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Compassionate Release, ECF No. 68 (Aug. 5, 2020) ("Def.'s Mot."); *see also* Mem. in Supp., ECF No. 69 (Aug. 5, 2020) ("Def.'s Mem."). The Government opposes his motion. Mem. in Opp'n, ECF No. 76 (Aug. 21, 2020) ("Gov't Opp'n").

For the reasons set forth below, Mr. Haessly's motion for compassionate release is **DENIED**.

**I.    BACKGROUND**

On February 18, 2016, Mr. Haessly waived his right to be indicted and pled guilty to a one-count Information charging him with use of an interstate facility to persuade a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). Plea Agreement, ECF No. 33 (Feb. 18, 2016).

---

[1] The Court notes inconsistencies in the spelling of the Defendant's last name, the caption spells his name "Hassely," while the parties and the waiver of indictment spell his name "Haessly." The Court will use "Haessly".

1

On June 27, 2016, the Court sentenced Mr. Haessly to a term of imprisonment of 240 months, a life term of supervised release; and a special assessment of $100. J., ECF No. 59 (June 27, 2016).

On August 5, 2020, Mr. Haessly moved for a reduction of sentence. Def.'s Mot.

On August 21, 2020, the Government opposed Mr. Haessly's motion. Gov't Opp'n.

On August 25, Mr. Haessly replied to the Government's opposition, Def.'s Reply, ECF No. 77 (Aug. 25, 2020), and filed a supplemental supporting brief, Def.'s Suppl. Mem., ECF No. 78 (Aug. 25, 2020).

On September 2, 2020, the Court held a telephonic motion hearing. Minute Entry, ECF No. 80 (Sept. 3, 2020).

## II.  STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 422 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III. DISCUSSION

The U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, 440 F. Supp. 3d 246, 249 (S.D.N.Y. 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, the majority of district courts, including in this District, have found that courts may make that determination independently. *See, e.g., United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 440 F. Supp. 3d at 249 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an

3

intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

Mr. Haessly "requests that the Court order his immediate release from the custody of the Bureau of Prisons ("BOP") because extraordinary and compelling reasons exist that warrant a reduction in sentence to time served with a[] period of home confinement." Def.'s Mot. at 1. He argues that his underlying health conditions, including cataracts, high blood pressure, type II diabetes, and high cholesterol, "make him more susceptible to suffering acutely should he contract COVID-19." Def.'s Mem. at 1. In his view, "[t]he growing coronavirus pandemic, which public health experts and policymakers recognize is especially dangerous in the confines of correctional institutions, in combination with Mr. Haessly's medical conditions, amounts to another extraordinary and compelling reason for a reduction in sentence." *Id.* He also argues that his family circumstances, an aging mother requiring care, warrant a reduction in sentence. *Id.* at 1–2.

The Government opposes Mr. Haessly's motion and argues that Mr. Haessly is "a technologically sophisticated pedophile who is a danger to the community." Gov't Opp'n at 1. The Government contends that Mr. Haessly's cataracts does not make him more susceptible to COVID and his eye surgery has been scheduled, but admits courts have found diabetes to be serious medical condition. *Id.* at 7–8.

Mr. Haessly replies that he "set forth three independent bases that established extraordinary and compelling circumstances, particularly when taken together[:]" (1) his need for cataracts surgery, (2) his diabetes, high blood pressure, high cholesterol, and cataracts in conjunction with COVID-19, and (3) the recent death of his father and the subsequent absence of a caretaker for his seventy-five year old mother. Def.'s Reply at 1–2. He clarifies that the BOP's

4

"abject refusal, for more than three years, to provide Mr. Haessly with urgently-needed cataracts surgery amounts to an extraordinary and compelling reason for a reduction in sentence[,]" and is "wholly separate and apart from any COVID-19 considerations." *Id.* at 2. Furthermore, his cataracts, which amount to legal blindness, means "he cannot meaningfully socially distance himself from guards and other inmates and relies heavily on his sense of touch." *Id.* at 3.

The Court will address each of the relevant factors in turn.

### 1.    Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. 2020) (defendant serving a 180 month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions— Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, -- F.Supp. 3d --, 2020 WL 1698732, *5 (D. Conn. Apr. 8, 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce

[Mr.] McCarthy's sentence."); *United States v. Zukerman*, -- F. Supp. 3d --, 2020 WL 1659880, at *5 (S.D.N.Y. 2020) ("Zukerman's age, combined with diabetes, hypertension, and obesity, satisfy" the requirement of an extraordinary and compelling reason to modify his sentence).

Mr. Haessly argues that his need for cataracts surgery, allegedly largely ignored by the BOP, "is a 'serious' physical condition' from which Mr. Haessly is 'not expected to recovery,' that 'substantially diminishes' [his] ability to provide self-care in prison." Def.'s mem. at 13 (citing U.S.S.G. § 1B1.13, Note 1).[2] Beyond his cataracts, Mr. Haessly suffers from high blood pressure, high cholesterol, and type II diabetes, all of which "place him at significantly greater risk for suffering acutely from COVID-19[.]" *Id.* at 18. Between July 2015 and July 2018, six of ten blood pressure readings "fell within the range established for stage two hypertension." *Id.* at 19. He has been prescribed medicine by the BOP since July 2018. *Id.* While the medication successfully controlled his condition for about a year, by July 2020 "Mr. Haessly's blood pressure has started to rise again, most recently reaching stage two hypertension levels." *Id.* at 20. Mr. Haessly's diabetes is also "a risk factor for COVID-19." *Id.* "For the past three years, Mr. Haessly has been right on the line of being 'pre-diabetic,' meaning an A1C level between 5.7 and 6.4, and 'diabetic,' meaning an A1C level 6.5 and above." *Id.* at 20–21.

Finally, Mr. Haessly takes medication to control high cholesterol. *Id.* at 21. While the Center for Disease Control "does not list high cholesterol itself as a COVID-19 risk factor, a recent study suggests that high cholesterol leads to increased mortality from COVID-19 in patients who already have high blood pressure and diabetes[.]" *Id.* (citing News Medical Life Sciences, *Does cholesterol play a role in COVID-19?*, https://www.news-

---

[2] Mr. Haessly received surgery on his left eye on August 24, 2020. Def.'s Suppl. Br. at 1. "The questions remains, however, if an when he will receive the same surgery on his right eye." *Id.* at 1–2. The sight differences have already caused headaches, and given the previous delay in approving this surgery, "it is unclear when, or if, he might expect to regain full eyesight." *Id.* at 2.

6

medical.net/news/20200512/Does-cholesterol-play-a-role-in-COVID-19.aspx (last visited July 29, 2020)). His risk of contracting COVID-19 is increased because of his eye conditions. "[H]e is unable to follow the [Center for Disease Control] recommendations for avoiding contracting the virus." *Id.* at 22. Mr. Haessly "relies on his sense of touch frequently in order to get an idea of his surroundings." *Id.*

Mr. Haessly also argues his family situation warrants a reduction of sentence. He is an only child, and his father passed away on July 11th of this year. *Id.* at 25. His seventy-five-year-old mother is now alone "and suffers from diabetes, hypertension, and high cholesterol, as well as back and eye issues." *Id.* "Mr. Haessly feels it is his responsibility to care for his elderly mother in light of his father's passing." *Id.*[3] If released to his mother's house in Ohio, he would "be able to take care of [his mother], and she him. As a veteran, Mr. Haessly will be able to receive health services insurance through the Veterans Administration ("VA") healthcare providers in Ohio[,]" and seek sex offender treatment there. *Id.* at 27–28.

The Government argues that the need for cataracts surgery, on its own, "does not warrant release under a compassionate release theory during the COVID-19 pandemic." Gov't Opp'n at 7. The Government acknowledges that some of Mr. Haessly's other medical conditions, like diabetes, "has been identified as a condition that makes individuals more susceptible to the impact of COVID-19." *Id.* The Government notes, however, that Fort Dix, where Mr. Haessly is currently incarcerated, "does not have any active COVID-19 infections in its inmate population." *Id.* at 8.

Mr. Haessly replies that his combination of medical conditions and family circumstances warrant release. Def.'s Reply at 2–3. He notes that the "self-reported BOP numbers make plain

---

[3] Mr. Haessly also argues that he would be able to provide needed assistance around his mother's home, who is otherwise dependent on the assistance of neighbors. Def.'s Mem. at 27.

7

that testing is not made readily available to inmates unless they exhibit severe COVID-19 symptoms." *Id.* at 4. In his view, prison conditions still pose a significant threat to someone with Mr. Haessly's medical conditions because of how rapidly COVID-19 can spread in prison. *Id.* at 4–5. Consequently, "the fact that Fort Dix is currently self-reporting no active cases does not mean that Mr. Haessly is not at significant risk, and does not preclude a finding that a reduction in sentence is warranted." *Id.* at 5.

The Court agrees.

Other district courts in this Circuit have held that the same underlying medical conditions, alone or separately, combined with the risk of coronavirus, constitute extraordinary and compelling reasons for release. *See United States v. Sedge*, 16-cr-537 (KAM), 2020 WL 2475071, at *3 (E.D.N.Y. May 13, 2020) ("Given that the defendant is over 50 and has demonstrated existing medical conditions that would place him into a high-risk category including hypertension, hyperlipidemia, and coronary artery disease, defendant has demonstrated that he is at a higher risk for suffering life threatening complications from COVID-19."); *United States v. Pena*, -- F. Supp. 3d --, 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (defendant had hypertension and hyperlipidemia, and the district court recognized the heightened risk hypertension poses); *United States v. Scparta*, -- F. Supp. 3d --, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (defendant suffered from "hypertension, sleep apnea, high blood pressure, and high cholesterol" and the court recognized that the CDC "has identified hypertension as a comorbidity that increase the likelihood of serious risk from COVID-19"); *United States v. Sawicz*, -- F. Supp. 3d --, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) ("While the defendant's hypertension does not place him squarely within any of the [Sentencing Guideline's] Policy Statement's definitions of 'extraordinary and compelling reasons,' the

8

defendant asserts that the COVID-19 pandemic, combined with his particular vulnerability to complications from COVID-19 . . . constitutes an 'extraordinary and compelling reason' for his release. . . . [The court] agree[s] with the defendant . . . .").[4]

Accordingly, the Court finds extraordinary and compelling reasons exist.[5]

### 2. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.

The parties agree that the exhaustion requirement has been met. The Government agreed that Mr. Haessly applied for compassionate release to the Fort Dix Warden on June 19, 2020. Gov't Opp'n at 5; *see also* Def.'s Mem. at 12. His request was denied on July 2, 2020 "because [Mr. Haessly] served less than 30% of his sentence and was a danger to the community." *Id.*

---

[4] Both Congress and the Attorney General have recognized the emergency presented to the BOP by COVID-19. In passing the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Congress provided that "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner on home confinement . . . ." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 2881 (2020). Attorney General William Barr subsequently made a "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons." *Sawicz*, 2020 WL 11815851, at *1 (citing a memorandum for the Director of BOP). As of September 3, 2020, however, Fort DIX FCI has reported zero active COVID-19 cases among inmates or among staff, zero staff or inmate deaths, and thirty-seven recovered inmates and six recovered staff. *See COVID-19, Coronavirus*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Sept. 3, 2020).

[5] The Court notes that family circumstances may warrant compassionate release where there is a "death or incapacitation of the caregiver of the defendant's minor child or minor children" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, Note 1(C). Because the Court finds Mr. Haessly's underlying medical conditions and the COVID-19 pandemic constitute an extraordinary and compelling reason for compassionate release, it need not consider whether the circumstances caused by Mr. Haessly's father's death and his mother's need for assistance otherwise constitute an extraordinary or compelling reason for release.

Given that more than thirty days have passed since Mr. Haessly submitted his request to the warden at Fort Dix FCI, the Court finds the exhaustion requirement has been met and that Mr. Haessly's motion is properly before the Court.

### 3. Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]'[ ] and only after considering the factors listed in 18 U.S.C. 3553(a)," *McCarthy*, 2020 WL 1698732 at *5.

Mr. Haessly argues that the community would not at risk if he was released. Def.'s Mem. at 28. This was his first criminal offense and he has now been in prison for over five years, and "there is strong support for the conclusion that Mr. Haessly is very unlikely to reoffend." *Id.* at 29. A report produced by Dr. Sasha Bardey, before Mr. Haessly's sentencing, indicates that his "conduct occurred on the Internet, pursuant to a child pornography addiction, and the internet activity was not 'a portal towards actual sexual contact with minors,' but rather, was 'an end in itself.'" *Id.* at 29 (quoting Def.'s Ex. B, ECF No. 69-1 at 19 (Aug. 5, 2020)). His therapist of over ten years, "stated that Mr. Haessly is 'keenly aware' of the impact his actions had on the victims." *Id.* at 30 (quoting Def.'s Ex. C., ECF No. 69-1 at 1 (Aug. 5, 2020)).

In Dr. Bardey's view, Mr. Haessly's own motivation to change, "in conjunction with strict supervision, 'significantly reduces the chance of recidivism.'" *Id.* (quoting Def.'s Ex. B. at 20). While at Fort Dix and without access to sex offender therapy, Mr. Haessly "voluntarily seeks the guidance of Ms. Wall [his therapist], communicating through letters and once a week phone calls since he's been incarcerated. . . . [and] [has] engag[ed] in self-directed sex offender

10

treatment through workbooks that he was able to access at For Dix." *Id.* Fort Dix, however, allegedly has stopped providing these materials. *Id.* Mr. Haessly has sought transfer to "FCI Elkton in order to participate in the sex offender programming there[.]" *Id.* Furthermore, Mr. Haessly "has never received a single disciplinary ticket" and "has availed himself of various programming at For Dix, including various music classes, English classes, and a class about small scale agriculture, which is a career he wishes to pursue upon release." *Id.* at 32. He continues to meet regularly with psychologists to manage his mental health issues, including depression, obsessive-compulsive disorder ("OCD"), and post-traumatic stress disorder ("PTSD").

If released, he would begin his term of supervised release and be subject to stringent conditions, conditions "Mr. Haessly willingly agreed to . . . as part of his plea agreement." *Id.* at 33 (citing Plea Agreement at 13). He contends that these conditions "should offer assurance that reoffending would be near impossible, even if Mr. Haessly otherwise posed a risk of recidivism which, . . . he does not." *Id.*

Mr. Haessly concludes that "a sentence of time served, with an imposition of home confinement, is sufficient to accomplish the goals of sentencing."[6] *Id.* His term of imprisonment thus far has "promote[d] respect for the law" and that his "commitment to treatment and rehabilitation puts him at very low risk of recidivism." *Id.* at 34–35. If released, he would have served "the equivalent of a 73-month sentence with good time credit[,]" which he contends "is a sufficient deterrent for a first-time offender who had never served a day in prison before." *Id.* at 35. He will have better access to medical treatment for his cataracts and sex offender treatment. *Id.* at 35–36.

---

[6] Mr. Haessly also notes that, while his offense carries a ten-year mandatory minimum, the Court may still "find[ ] [ ] extraordinary and compelling circumstances that warrant a sentence reduction." Def.'s Mem. at 36.

11

The Government argues that Mr. Haessly remains a danger to the community and is currently incarcerated in a BOP facility with no active cases of COVID-19 among its inmate population. Gov't Opp'n at 8–9. The Government reminds the Court that Mr. Haessly "is a pedophile who manipulated young boys through the internet to engage in sex acts for his gratification." *Id.* at 9. He successfully avoided detection and "victimized over 950 children." In the Government's view, Mr. Haessly "is a danger to the community and should serve the sentence as it was imposed." *Id.*

Mr. Haessly responds and reiterates that he "is not a danger to the community[,]" that "the goals of sentencing have already been met by Mr. Haessly serving the equivalent of a 73-month sentence after accounting for good time credit[,]" and "he has shown a sustained and genuine commitment to rehabilitation . . . ." Def.'s Reply at 6–7.

The Court disagrees.

Here, the § 3553(a) factors weigh against Mr. Haessly's release.

Most significantly, Mr. Haessly's current term of incarceration stems from the sheer quantity of victims and the fact that, while committing the offending conduct, Mr. Haessly was in therapy and seeking help. He amassed a trove of videos and images, at the expense of hundreds of children.

The Court appreciates the steps that Mr. Haessly has taken while incarcerated thus far to rehabilitate himself, but his sentence must "reflect the seriousness of the offense, . . . and . . . provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). *See United States v. Gamble*, 3:18-CR-0022-4 (VLB), 2020 WL 1955338, at *6 (D. Conn. Apr. 23, 2020) (denying motion for release "because Defendant is ill suited for home confinement because of his length[y] criminal history and [because] no conditions [of release] could adequately protect the

12

public"); *United States v. Lopez*, 16-CR-317 (PAE), 2020 WL 3100462, at *3 (S.D.N.Y. June 10, 2020) (denying motion for compassionate release where defendant had sixty-six months left of their sentence and "release now, or any time soon, [was] therefore incompatible with the sentence [the original Judge] thoughtfully imposed, even considering the new facts that have emerged in connection with the pandemic"). At this time, there is not enough in this record to conclude that Mr. Haessly's current term of imprisonment no longer remains necessary to ensure the safety of the community.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh against immediate release.

### IV. CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of September, 2020.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge